UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ASSOCIATION OF AMERICAN UNIVERSITIES, *et al.*,<br><br>　*Plaintiffs*,<br><br>　　　　v.<br><br>DEPARTMENT OF ENERGY *et al.*,<br><br>　*Defendants*. | Case No. 25-cv-10912 |

### RESPONSE TO SECOND DECLARATION OF BERTA SCHREIBER

Plaintiffs submit this brief response to the Second Declaration of Berta Schreiber, ECF No. 60, filed by the Department of Energy (DOE) on May 2, 2025, and the Court's related questions at oral argument on April 28, 2025. DOE's submission only underscores that Plaintiffs seek to vindicate rights conferred by regulation and statute, that the Tucker Act does not direct these claims to the Court of Federal Claims, and that a preliminary injunction is warranted.

The exemplar Negotiated Indirect Cost Rate Agreements ("NICRAs") simply set a general rate for indirect costs and are plainly not themselves contracts whose breach could trigger a right to payment or jurisdiction in the Court of Federal Claims. To do so, they would need to be "money-mandating" and establish an entitlement to "'actual, presently due money damages from the United States,'" *Taylor v. United States*, 73 Fed. Cl. 532, 545 (2006) (quoting *United States v. King*, 395 U.S. 1, 3 (1969)), which they plainly do not do. Instead, the NICRAs each underscore that they are simply one step in implementing the agency's regulatory obligations—obligations that exist separately and apart from the NICRAs or any particular grant and that Plaintiffs can challenge in district court as such. *See* Second Schreiber Decl., Exh. A, ECF No. 60-1 (Washington University in St. Louis NICRA), Section III.D ("The rates in this Agreement were approved in accordance

1

with the authority in Title 2 of the Code of Federal Regulations, Part 200 (2 CFR 200), and should be applied to grants, contracts and other agreements covered by 2 CFR 200."); *id.* Exh. B, ECF No. 60-2, Section III.D (University of Wisconsin-Madison NICRA) (same); *id.* Exh. C, ECF No. 60-3 (Massachusetts Institute of Technology NICRA) at 1 ("The … rates contained herein are for use … in accordance with the provisions and cost principles mandated by 2 CFR Part 200."), *id.* Section II.E ("The rates set forth in Section I are negotiated in accordance with and under the authority set forth in 2 CFR Part 200").

As the language of the MIT NICRA underscores, the mandates come from the regulations, and the NICRAs are just one step—albeit an important one—in implementing the regulatory mandates. Agencies must use the negotiated indirect cost rates because Part 200 provides that they "must be accepted," 2 C.F.R. § 200.414(c)(1), and agencies can avail themselves of the narrow exception for "deviations," *id.* § 200.414(c), only because the Part 200 provides that exception—which, indeed, the NICRAs themselves nowhere mention. The regulations also require that grant awards must be preceded by a Notice of Funding Opportunity (NOFO), 2 C.F.R. § 200.204, as DOE's declaration confirms, *see* Second Schreiber Decl. ¶ 3, and that NOFOs "must include[] ... the policies relating to indirect cost rate reimbursement," 2 C.F.R. § 200.414(c)(4). The regulations further require that Notices of Awards must include the total amount of federal funds obligated by the award, *see* 2 C.F.R. § 200.211(b)(7), and that the negotiated indirect cost rates should apply throughout the life of the awards, *see* 2 C.F.R. Part 200, App'x III(C)(7)(a). These obligations apply because the regulations provide as much, and DOE's Rate Cap Policy violates these regulations—and 41 U.S.C. § 4708 and the Administrative Procedure Act, 5 U.S.C. § 706, as well.

Plaintiffs' suit challenging the Rate Cap Policy's violations of the governing regulations

and statutes as to both existing and future grants is a classic challenge to unlawful agency action that belongs in an Article III district court.  It is not an action to enforce any institutions' particular NICRAs, which by their terms do not obligate the government to pay any particular amount.  The regulations and statutes, by contrast, do obligate DOE in myriad ways that the agency has chosen to ignore.  The Rate Cap Policy is contrary to those obligations and should be enjoined for all the reasons set forth in Plaintiffs' briefs and at oral argument in this matter.

Respectfully submitted,

Dated: May 5, 2025

| JENNER & BLOCK LLP | CLEMENT & MURPHY, PLLC |
|---|---|
| By: */s/ Lindsay C. Harrison* | By: */s/ Paul D. Clement* |
| Lindsay C. Harrison (*pro hac vice*)<br>Ishan K. Bhabha (*pro hac vice*)<br>Lauren J. Hartz (*pro hac vice*)<br>Anjali Motgi (*pro hac vice*)<br>Zachary C. Schauf (*pro hac vice*)<br>1099 New York Avenue, NW<br>Suite 900<br>Washington, DC 20001<br>Tel: (202) 639-6000<br>IBhabha@jenner.com<br>LHarrison@jenner.com<br>LHartz@jenner.com<br>AMotgi@jenner.com<br>ZSchauf@jenner.com | Paul D. Clement (*pro hac vice*)<br>James Y. Xi (*pro hac vice*)<br>Kyle R. Eiswald (*pro hac vice*)<br>706 Duke Street<br>Alexandria, VA 22314<br>Tel: (202) 742-8900<br>paul.clement@clementmurphy.com<br>james.xi@clementmurphy.com<br>kyle.eiswald@clementmurphy.com<br>*Attorneys for Association of American Universities, Association of Public and Land-grant Universities, and American Council on Education* |

Shoba Pillay, BBO No. 659739
353 N Clark Street
Chicago, IL 60654
Tel: (312) 222-9350
SPillay@jenner.com
*Attorneys for All Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of May, 2025, I caused the foregoing to be electronically filed with the clerk of the court for the U.S. District Court for the District of Massachusetts, by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, a true and correct copy of the foregoing instrument and all attachments.

*/s/ Lindsay C. Harrison*
Lindsay C. Harrison
