**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

ASSOCIATION OF AMERICAN UNIVERSITIES, *et al.*,

Plaintiffs,

v.

DEPARTMENT OF ENERGY, *et al.*,

Defendants.

Case No. 1:25-cv-10912

**PLAINTIFF AAU'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO THE EQUAL ACCESS TO JUSTICE ACT**

# TABLE OF CONTENTS


**Page(s)**

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

FACTUAL BACKGROUND ..... 1

LEGAL STANDARD ..... 4

ARGUMENT ..... 5

I. AAU is entitled to attorneys' fees and costs under the EAJA. ..... 5

A. AAU meets EAJA's eligibility requirements ..... 5

B. AAU is a prevailing party, its petition was timely filed, and no special circumstances make an award unjust. ..... 6

C. The government's position was not substantially justified. ..... 6

II. The requested amount of attorneys' fees is reasonable. ..... 12

A. The requested rates are reasonable. ..... 13

B. The number of hours is reasonable. ..... 15

CONCLUSION ..... 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ass'n of American Universities v. Department of Defense*, 792 F. Supp. 3d 143 (D. Mass. 2025)....10

*Ass'n of American Universities v. Department of Defense*, 806 F. Supp. 3d 79 (D. Mass. 2025)....8, 9, 10

*Ass'n of American Universities v. Department of Energy*, 789 F. Supp. 3d 118 (D. Mass. 2025)....3, 7, 8, 9, 10, 11, 14

*Ass'n of American Universities v. Department of Energy*, No. 25-1727 (1st Cir. Feb. 6, 2026)....4, 6, 12

*Ass'n of American Universities v. National Science Foundation*, 788 F. Supp. 3d 106 (D. Mass. 2025)....8, 9, 10

*Atlantic Fish Spotters Ass'n v. Daley*, 205 F.3d 488 (1st Cir. 2000)....5, 14

*Berishev v. Chertoff*, 486 F. Supp. 2d 202 (D. Mass. 2007)....7

*Blaney v. Saul*, No. 18-cv-12009, 2020 WL 6162944 (D. Mass. Oct. 21, 2020)....14–15

*Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources.*, 532 U.S. 598 (2001)....6

*Cano v. Saul*, 505 F. Supp. 3d 20 (D. Mass. 2020)....14

*Castaneda-Castillo v. Holder*, 723 F.3d 48 (1st Cir. 2013)....5, 6, 13

*Clement v. Saul*, No. 18-cv-10550, 2020 WL 13558730 (D. Mass. Mar. 26, 2020)....13

*Commissioner, Immigration & Naturalization Service v. Jean*, 496 U.S. 154 (1990)....5

*Conserva v. Kijakazi*, No. 22-cv-10205, 2023 WL 8126660 (D. Mass. June 23, 2023)....13, 14

*Dantran, Inc. v. United States Department of Labor*, 246 F.3d 36 (1st Cir. 2001)....8

*Encino Motorcars, LLC v. Navarro*, 579 U.S. 211 (2016)....10

*Enos v. Saul*, No. 19-cv-10023, 2020 WL 6082127 (D. Mass. Oct. 15, 2020)....15

*Kiareldeen v. Ashcroft*, 273 F.3d 542 (3d Cir. 2001)....7

*Massachusetts v. National Institutes of Health*, 164 F.4th 1 (1st Cir. 2026) ........................8, 9, 11

*Massachusetts v. National Institutes of Health*, 770 F. Supp. 3d 277 (D. Mass.), *judgment entered*, No. 1:25-cv-10338, 2025 WL 1063760 (D. Mass. Apr. 4, 2025) ........................2, 7, 10

*Massachusetts v. National Institutes of Health*, No. 1:25-cv-10338, 2025 WL 1063760 (D. Mass. Apr. 4, 2025) ........................8

*McDonald v. Bowen*, 693 F. Supp. 1298 (D. Mass. 1988), *aff'd in part, remanded in part sub nom. McDonald v. Secretary of Health & Human Services*, 884 F.2d 1468 (1st Cir. 1989) ........................6, 12

*Pierce v. Underwood*, 487 U.S. 552 (1988) ........................7, 12

*Schock v. United States*, 254 F.3d 1 (1st Cir. 2001) ........................7

*Shalan v. Chertoff*, No. 05-cv-10980, 2006 WL 3307512 (D. Mass. Nov. 14, 2006) ........................13

*Smyth v. Kijakazi*, No. 20-cv-12275, 2021 WL 5771634 (D. Mass. Dec. 6, 2021) ........................14

*Tang v. Chertoff*, 689 F. Supp. 2d 206 (D. Mass. 2010) ........................7, 13

*Texas Food Industry Ass'n v. United States Department of Agriculture*, 81 F.3d 578 (5th Cir. 1996) ........................5

*Washington Department of Wildlife v. Stubblefield*, 739 F. Supp. 1428 (W.D. Wash. 1989) ........................6

**Statutes**

28 U.S.C. § 2412 ........................1

28 U.S.C. § 2412(a)(1) ........................16

28 U.S.C. § 2412(d)(1)(A) ........................5

28 U.S.C. § 2412(d)(1)(B) ........................6

28 U.S.C. § 2412(d)(2)(A) ........................5

28 U.S.C. § 2412(d)(2)(A)(ii) ........................12

28 U.S.C. § 2412(d)(2)(B) ........................5

28 U.S.C. § 2412(d)(2)(G) ........................6

*Commerce, Justice, Science; Energy and Water Development; and Interior and Environment Appropriations Act, 2026*, Pub. L. No. 119-74, § 313, 140 Stat. 5, 89 .....3, 11

*Consolidated Appropriations Act, 2018*, Pub. L. No. 115-141, § 226, 132 Stat. 348, 740 .....11

**Other Authorities**

2 C.F.R. § 200.414 .....7, 9

2 C.F.R. § 200.414(c)(1) .....8, 9

2 C.F.R. § 200.414(c)(3) .....9

DOE, *PF 2026-30 Indirect Cost Rates, Policy Flashes and Financial Assistance Letter No Longer in Effect Due to the Commerce, Justice, Science; Energy and Water Development; and Interior and Environment Appropriations Act, 2026* (Jan. 27, 2026), https://www.energy.gov/management/pf-2026-30-indirect-cost-rates-policy-flashes-and-financial-assistance-letter-no-longer .....3–4, 12

Pete Hegseth, Sec'y of Def., *Implementation of a 15% Indirect Cost Cap on Assistance Awards to Institutions of Higher Education* (May 14, 2025) .....1

Emil Michael, Under Sec'y of Def., *Implementation of a 15% Indirect Cost Cap on Assistance Awards to Institutions of Higher Education* (June 12, 2025) .....2

NIH, NOT-OD-25-068, *Supplemental Guidance to the 2024 NIH Grants Policy Statement: Indirect Cost Rates* (Feb. 7, 2025), https://grants.nih.gov/grants/guide/notice-files/NOT-OD-25-068.html .....1

NSF, NSF 25-034, *Policy Notice: Implementation of Standard 15% Indirect Cost Rate* (May 2, 2025), https://www.nsf.gov/policies/document/indirect-cost-rate .....1

Off. of Mgmt. & Budget, *A Budget for a Better America: Major Savings and Reforms* (2019), https://www.govinfo.gov/content/pkg/BUDGET-2020-MSV/pdf/BUDGET-2020-MSV.pdf .....11

U.S. Bureau of Labor Statistics, Databases, Tables & Calculators by Subject, https://data.bls.gov/pdq/SurveyOutputServlet?data_tool=dropmap&series_id=CUURS11ASA0,CUUSS11ASA0 (data extracted Apr. 13, 2026) .....13

## INTRODUCTION

Plaintiff Association of American Universities ("AAU") hereby moves for an award of attorneys' fees and costs in the amount of $266,340.30, pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.

Last spring, the Department of Energy ("DOE") issued a Policy purporting to cap at 15% the rates it would reimburse for so-called "indirect costs" associated with awards to institutions of higher education ("IHEs"). This 15% rate cap was not unique to DOE—when DOE announced its Policy on April 11, 2025, a court in this District had already vacated and permanently enjoined a materially identical policy issued by the National Institutes of Health ("NIH"). Courts in this District have since vacated four rate cap policies—including DOE's, NIH's, and two others issued by the National Science Foundation ("NSF") and Department of Defense ("DOD")—and the government has voluntarily dismissed its appeals or chosen not to petition for certiorari in all four cases. This case is the third of the four suits to reach an unappealable end. AAU now seeks to recoup some of the cost of challenging a policy that Defendants knew or should have known was unlawful from its inception.

## FACTUAL BACKGROUND

This litigation involved a challenge under the Administrative Procedure Act ("APA") to DOE's Rate Cap Policy. The Policy imposed a categorical 15% cap on indirect cost rates for new and existing grant awards to IHEs. *See* Dkt. 2 ("Policy Flash 2025-22"). DOE's Rate Cap Policy was materially identical to policies issued by NIH, NSF, and DOD, each of which also set an across-the-board indirect cost rate of not more than 15% for all IHE grants.[1] At the time

---

[1] *See* NIH, NOT-OD-25-068, *Supplemental Guidance to the 2024 NIH Grants Policy Statement: Indirect Cost Rates* (Feb. 7, 2025), https://grants.nih.gov/grants/guide/notice-files/NOT-OD-25-068.html; NSF, NSF 25-034, *Policy Notice: Implementation of Standard 15% Indirect Cost Rate* (May 2, 2025), https://www.nsf.gov/policies/document/indirect-cost-rate; Pete Hegseth, Sec'y of Def., *Implementation of a 15% Indirect Cost Cap on Assistance Awards to Institutions of Higher Education* (May 14, 2025), *AAU v. DOD*, 1:25-cv-

Defendants issued the DOE Policy, a court in this District had already vacated and enjoined the NIH policy—including entering a final judgment on the government's own motion a week before the DOE issued its materially identical Policy. *See Massachusetts v. NIH*, 770 F. Supp. 3d 277, 327 (D. Mass. 2025), *judgment entered*, No. 1:25-cv-10338, 2025 WL 1063760 (D. Mass. Apr. 4, 2025).

DOE announced its Rate Cap Policy through a "Policy Flash" issued at approximately 5:00 pm on Friday, April 11, 2025. Policy Flash 2025-22; Dkt. 19 at 1. In a sparse, two-page memorandum, DOE announced it would "no longer use the negotiated indirect cost rate for grants awarded to IHEs" and "[i]nstead . . . set[] a standardized 15 percent indirect cost rate for all grant awards to IHEs." Policy Flash 2025-22 at 2. For existing grants, DOE claimed it was "undertaking action to terminate all grant awards to IHEs that do not conform with this updated policy." *Id.* For new grants, DOE announced that "[a]ll future Department grant awards to IHEs will default to this 15 percent indirect cost rate." *Id.*

When DOE issued the Policy Flash, Plaintiffs were forced to act expeditiously to prevent irreparable harm to Plaintiffs and their members because the Policy Flash appeared to call for immediate implementation of the Rate Cap Policy. Concerned DOE would immediately start forcing IHEs to accept an indirect cost rate of 15% or else have their existing grants terminated, Plaintiffs filed a complaint on Monday, April 14, three days after DOE announced its Policy (*i.e.*, the following business day), along with 19 declarations outlining the harms that would come from allowing the Rate Cap Policy to go into effect. Dkt. 1; Dkts. 2-1–2-19. Plaintiffs simultaneously

---

11740 (D. Mass June 16, 2026), ECF No. 1-1; Emil Michael, Under Sec'y of Def., *Implementation of a 15% Indirect Cost Cap on Assistance Awards to Institutions of Higher Education* (June 12, 2025), *AAU v. DOD*, 1:25-cv-11740 (D. Mass June 16, 2026), ECF No. 1-2.

moved for a temporary restraining order ("TRO"), Dkt. 3, which this Court quickly granted on April 16, 2025, Dkt. 34.

This Court then granted more enduring preliminary relief. After further briefing and a hearing, this Court, in a well-reasoned opinion, granted a preliminary injunction enjoining the Rate Cap Policy. *AAU v. DOE*, 789 F. Supp. 3d 118, 152 (D. Mass. 2025). The Court found the Rate Cap Policy likely: was arbitrary and capricious on several grounds, *id.* at 139–43; conflicted with the governing regulations, *id.* at 143–47; and was impermissibly retroactive, *id.* at 147–48. The Court also found that Plaintiffs had credibly demonstrated irreparable harm and that the balance of equities and public interest weighed in their favor. *Id.* at 148–52.

Defendants subsequently moved the Court to enter final judgment based on the reasoning in this Court's opinion granting a preliminary injunction. Dkt. 68. On June 30, 2025, this Court granted Defendants' motion and entered a final judgment in this case, vacating the Policy Flash and declaring the Rate Cap Policy to be unlawful. Dkt. 71. Defendants appealed. Dkt. 72.

In the meantime, Congress made clear it disapproved of the Rate Cap Policy, and that it violates the governing regulations. After briefing in the First Circuit had begun but before oral argument, Congress passed the *Commerce, Justice, Science; Energy and Water Development; and Interior and Environment Appropriations Act, 2026*, which includes a provision requiring that: "the Department of Energy shall continue to apply the indirect cost rates, including negotiated indirect cost rates . . . including with respect to the approval of deviations from negotiated indirect cost rates, to the same extent and in the same manner as was applied in fiscal year 2024." Pub. L. No. 119-74, § 313, 140 Stat. 5, 89 (Jan. 23, 2026). DOE announced four days later that the Policy Flash was no longer in effect. DOE, *PF 2026-30 Indirect Cost Rates, Policy Flashes and Financial Assistance Letter No Longer in Effect Due to the Commerce, Justice, Science; Energy and Water*

*Development; and Interior and Environment Appropriations Act, 2026* (Jan. 27, 2026), https://www.energy.gov/management/pf-2026-30-indirect-cost-rates-policy-flashes-and-financial-assistance-letter-no-longer ("Rate Cap Policy Termination Announcement"). Nevertheless, Defendants filed their reply brief on February 6, 2026. Reply Brief, *AAU v. DOE*, No. 25-1727 (1st Cir. Feb. 6, 2026).

Given this turn of events, on March 10, 2026, the First Circuit issued an order noting that in their reply brief, Defendants had "only mentioned, without elaboration, that Policy Flash 2025-22 is 'no longer in effect.'" Order, *AAU v. DOE*, No. 25-1727 (1st Cir. Mar. 10, 2026). It therefore requested supplemental briefing as to whether the case was moot. *Id.* The order also gave Plaintiffs a chance to respond regarding the effect of the First Circuit's decision affirming the vacatur of the NIH rate cap policy. *Id.* The following day, on March 11, 2026, Defendants moved to dismiss their appeal. Unopposed Mot. to Voluntarily Dismiss Appeal, *AAU v. DOE*, No. 25-1727 (1st Cir. Mar. 11, 2026). The First Circuit granted the motion and issued the mandate terminating the case on March 16, 2026. Judgment, *AAU v. DOE*, No. 25-1727 (1st Cir. Mar. 16, 2026); Mandate, *AAU v. DOE*, No. 25-1727 (1st Cir. Mar. 16, 2026).

AAU now files this timely motion for attorneys' fees and costs under the EAJA.

## LEGAL STANDARD

Under the EAJA, "a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). To receive attorneys' fees and costs under the EAJA, the First Circuit requires an eligible plaintiff to show that: (1) it "is the prevailing party in the civil action"; (2) its "petition was timely filed"; (3) "the government's position was not substantially justified"; and (4) "no special circumstances make an award against the government unjust."

*Castaneda-Castillo v. Holder*, 723 F.3d 48, 57 (1st Cir. 2013) (citing *Comm'r, INS v. Jean*, 496 U.S. 154, 158 (1990)).

## ARGUMENT

### I. AAU is entitled to attorneys' fees and costs under the EAJA.

AAU is entitled to an award of attorneys' fees and costs under the EAJA because it is the entity responsible for paying the legal fees and costs in this matter and this request meets the statutory requirements: AAU is an eligible, prevailing party; its petition is timely; Defendants' position was not substantially justified; and no special circumstances make an award unjust. *See* 28 U.S.C. § 2412(d)(1)(A), (d)(2)(B). Moreover, the fees requested are reasonable in light of the expertise of AAU's attorneys, the complexity of the legal issues, the stakes of the litigation, and the complete relief obtained. *See id.* § 2412(d)(2)(A).

#### A. AAU meets EAJA's eligibility requirements.

A prevailing 501(c)(3) organization is eligible to recoup fees under the EAJA "regardless of the net worth of such organization," as long as it does not have "more than 500 employees at the time the civil action was filed."[2] 28 U.S.C. § 2412(d)(2)(B). As a 501(c)(3) organization with fewer than 500 employees, *see* Declaration of Barbara Snyder, Ex. 1 ¶ 2, and as the entity responsible for the attorneys' fees in this matter, *id.* ¶ 3, AAU is permitted to recover fees by the clear text of the EAJA.

[2] The EAJA-eligibility of an organization's *members* is irrelevant for the eligibility analysis. *See Tex. Food Indus. Ass'n v. U.S. Dep't of Agric.*, 81 F.3d 578, 582 (5th Cir. 1996) (holding associations are eligible for EAJA fees "on the basis of each association's independent qualifications—not the qualifications of its constituent members"); *see also Atl. Fish Spotters Ass'n v. Daley*, 205 F.3d 488, 489, 493 (1st Cir. 2000) (permitting award of attorneys' fees for trade association).

### B. AAU is a prevailing party, its petition was timely filed, and no special circumstances make an award unjust.

AAU is a prevailing party under the EAJA. A "prevailing party" is one that has been "awarded some relief by the court." *Castaneda-Castillo*, 723 F.3d at 57 (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 603 (2001)). AAU received relief through vacatur of the DOE Rate Cap Policy and a declaration of its unlawfulness from this Court. Dkt. 71.

This petition is timely. The EAJA requires that a petition for attorneys' fees and costs be filed "within thirty days of final judgment in the action." 28 U.S.C. § 2412(d)(1)(B). A "final judgment" is a judgment that is final and unappealable. *Id.* § 2412(d)(2)(G). The First Circuit entered an unappealable, final judgment in this case on March 16, 2026. Judgment, *AAU v. DOE*, No. 25-1727 (1st Cir. Mar. 16, 2026); Mandate, *AAU v. DOE*, No. 25-1727 (1st Cir. Mar. 16, 2026). This motion was timely filed within thirty days of that final judgment.

There are no special circumstances that would justify the denial of attorneys' fees and costs, and Defendants bear the burden of proof should they argue otherwise.[3] *See McDonald v. Bowen*, 693 F. Supp. 1298, 1302 (D. Mass. 1988), *aff'd in part, remanded in part sub nom. McDonald v. Sec'y of Health & Hum. Servs.*, 884 F.2d 1468 (1st Cir. 1989).

### C. The government's position was not substantially justified.

Once an EAJA petitioner alleges that the government's position was not substantially justified, the government bears "the burden of establishing *both* that 'the agency action giving rise to the litigation was substantially justified' *and* that 'its litigation positions were substantially

---

[3] To the extent the government may argue that the presence of other Plaintiffs who may be ineligible to receive EAJA fees is a special circumstance, that is unsupported by case law and wrongheaded in any event. *See Wash. Dep't of Wildlife v. Stubblefield*, 739 F. Supp. 1428, 1432 (W.D. Wash. 1989) (finding "no special circumstances make an award of fees to Audubon unjust, despite the participation of Wildlife (an ineligible co-plaintiff) with Audubon in the lawsuit").

justified.'" *Tang v. Chertoff*, 689 F. Supp. 2d 206, 214 (D. Mass. 2010) (quoting *Kiareldeen v. Ashcroft*, 273 F.3d 542, 545 (3d Cir. 2001)); *Schock v. United States*, 254 F.3d 1, 5 (1st Cir. 2001) (directing "courts . . . to examine both the prelitigation actions or inaction of the agency on which the litigation is based and the litigation position of the United States" when determining whether a position is substantially justified). The government is required to demonstrate, by a preponderance of the evidence, that its overall position had "a reasonable basis both in law and in fact." *Berishev v. Chertoff*, 486 F. Supp. 2d 202, 206 (D. Mass. 2007) (quoting *Pierce v. Underwood*, 487 U.S. 552, 563 (1988)); *see also Pierce*, 487 U.S. at 566 n.2 ("[A] position can be . . . substantially . . . justified if a reasonable person could think it correct."). Also relevant to the analysis is whether "a string of court decisions" has come out for or against the government on a particular issue. *See Schock*, 254 F.3d at 6 (citing *Pierce*, 487 U.S. at 568).

Neither DOE's issuance of the Rate Cap Policy nor its positions in litigation were substantially justified. *First*, both the Policy and DOE's litigation positions were facially unreasonable in light of a prior decision from a court in this District vacating and enjoining a materially similar policy. *See NIH*, 770 F. Supp. 3d at 327, *judgment entered*, No. 1:25-cv-10338, 2025 WL 1063760 (D. Mass. Apr. 4, 2025). Underscoring the similarities between the two cases, and the unreasonableness of Defendants' positions, this Court cited the *NIH* opinion several times in granting the preliminary injunction against the DOE. *See, e.g.*, *DOE*, 789 F. Supp. 3d at 145 (agreeing with the *NIH* court's interpretation of 2 C.F.R. § 200.414); *id.* at 147–48 (citing the *NIH* opinion's similar finding that the NIH rate cap was impermissibly retroactive). But rather than take the *NIH* opinion and briefing into account when drafting and defending the DOE Rate Cap Policy, Defendants issued a similarly flawed Policy and made nearly identical arguments in support of it. *See id.* at 131–32 (noting that a court in this District had already found the NIH rate

cap policy "violated the government-wide regulations governing indirect cost rates and the reasoned decision-making requirements of the APA").

*Second*, Defendants' position only became less justified and more unreasonable as the litigation continued. The First Circuit has held that even if a position is substantially justified at the start of the litigation, it can become unjustified as the case continues. *See Dantran, Inc. v. U.S. Dep't of Labor*, 246 F.3d 36, 41, 44 (1st Cir. 2001). Before DOE dismissed its appeal, courts in this District had granted permanent relief against two other materially similar policies issued by the NSF and DOD, in addition to the permanent relief already granted against NIH. *See AAU v. NSF*, 788 F. Supp. 3d 106, 138–44 (D. Mass. 2025); *AAU v. DOD*, 806 F. Supp. 3d 79, 120–25 (D. Mass. 2025) ("*DOD II*"); *Massachusetts v. NIH*, No. 1:25-cv-10338, 2025 WL 1063760 (D. Mass. Apr. 4, 2025). But there is more: The First Circuit, in the only appeal to be fully briefed and argued among this set of cases, affirmed the district court's holding that the NIH policy was unlawful, including—as this Court found for the DOE Policy—that the NIH policy violated the relevant grantmaking regulations. *Massachusetts v. NIH*, 164 F.4th 1, 19 (1st Cir. 2026). While Defendants' position here was not substantially justified from the outset, this string of losses—starting from before DOE issued its Policy and continuing throughout the lifetime of the litigation—only made Defendants' position less justified over time.

*Third*, had Defendants considered whether the Rate Cap Policy was substantially justified on the merits, they should have realized that the Policy was unlawful. This Court held that DOE's Policy was likely contrary to the grantmaking regulation. Specifically, this Court found that 2 C.F.R. § 200.414(c)(1) requires an agency to engage in careful consideration of a strong underlying rationale to deviate from the negotiated rate, which DOE did not do. *See DOE*, 789 F. Supp. 3d at 144–45 ("On the present record, there is nothing to indicate that the DOE approved

the change to IHE indirect cost rates based on a 'strong' or 'documented' justification."); *see also NSF*, 788 F. Supp. 3d at 133 (making a similar finding regarding the NSF policy); *DOD II*, 806 F. Supp. 3d at 97–98 (finding the government "ha[s] not followed the requirements of section 200.414(c)(1)"). Furthermore, this Court found that "Plaintiffs are more likely than not to prevail on their argument that the Rate Cap Policy violates Section (c)(3) to the extent that the cross-reference to that provision within Section (c)(1) requires the documented justification underlying agency approval to be made publicly available, which did not happen here." *DOE*, 789 F. Supp. 3d at 145. This Court also found the Rate Cap Policy more likely than not violated 2 C.F.R. § 200.414(c)(3) "because the regulation contemplates a step-by-step process for a change to a negotiated indirect cost rate, rather than a one fell swoop approach invalidating all pre-existing [Negotiated Indirect Cost Rate Agreements] and changing the well-established procedure for all future grants." *Id.*; *see also NIH*, 164 F.4th at 18–19 (finding the similar NIH grantmaking regulations require a sequential process for modifying indirect cost rates); *NSF*, 788 F. Supp. 3d at 132 ("The 15% Indirect Cost Rate otherwise violates Section 200.414(c) where NSF announced and imposed a cap on indirect cost rates in one fell swoop."). In sum, this Court was clear that the Rate Cap Policy likely violated the grantmaking regulation 2 C.F.R. § 200.414 several times over.

This Court also found that the Rate Cap Policy was impermissibly retroactive. The Policy instructed DOE to impose a 15% indirect cost rate cap on all existing grants, most of which had a higher indirect cost rate—some significantly higher. Policy Flash 2025-22; *DOE*, 789 F. Supp. 3d at 147. This Court found "the Rate Cap Policy . . . 'would impair the rights that the institution possessed when accepting the Notice of Award' by 'impos[ing] a new, lower rate, [and] displacing the institutions' right to the previously negotiated—and legally binding—' indirect cost rate upon which they have operated and relied since accepting the award." *DOE*, 789 F. Supp. 3d at 147–

48 (quoting *NIH*, 770 F. Supp. 3d at 318). This upending of the legally binding terms of the grant awards would have violated the longstanding presumption against retroactivity. *Id.*

And more: The Court found that Plaintiffs were likely to succeed on their argument that the Policy was arbitrary and capricious. The Policy Flash was sparse, filling not even two pages. Policy Flash 2025-22. As this Court noted, the entire explanation for the change in policy was nothing more than a paragraph composed of "aspirational goals." *DOE*, 789 F. Supp. 3d at 140. The Policy Flash "provide[d] no reasoned explanation for how or why the DOE concluded that indirect cost rates exceeding 15 percent do not constitute an appropriate or efficient use of DOE funds, nor d[id] it explain how limiting funding for indirect costs would lead to that money being put to more appropriate and efficient uses." *Id.* at 140–41; *see also AAU v. DOD*, 792 F. Supp. 3d 143, 171 (D. Mass. 2025) ("*DOD I*") (collecting examples of other courts in this District making this same finding about other rate cap policies). Because the Policy Flash articulated only "conclusory policy goals," not "good reasons for the new policy," this Court found the Rate Cap Policy to be arbitrary and capricious. *DOE*, 789 F. Supp. 3d at 141 (quoting *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 223 (2016)). Additionally, this Court found the Policy to likely be arbitrary and capricious due to the lack of reasoned explanation for upending reliance interests and decades of understanding between IHEs and DOE. *Id.* at 141–43; *see also NSF*, 788 F. Supp. 3d at 137 (finding the NSF policy similarly "fail[ed] to meaningfully address Plaintiffs' reliance interests"); *NIH*, 770 F. Supp. 3d at 308–11 (same); *DOD II*, 806 F. Supp. 3d at 118–20 (same); *DOD I*, 792 F. Supp. 3d at 174–75 ("Defendants also wholly fail to address multiple judicial decisions that recognized valid reliance interests in the negotiated rates for indirect costs.").

*Finally*, if all the above were not enough, the unlawfulness of the DOE Rate Cap Policy should have been clear from Congress's response to the first Trump Administration's attempt to

limit indirect costs. In 2017, when the Administration proposed capping indirect costs on NIH grants at 10%, Congress passed an appropriations rider prohibiting any cap and requiring NIH to follow the institution-specific approach to setting indirect cost rates set forth in the governing regulations—which are materially identical to the regulations that apply to DOE. *See Consolidated Appropriations Act, 2018*, Pub. L. No. 115-141, § 226, 132 Stat. 348, 740. In other words, as the First Circuit held in the *NIH* case and this Court noted in its opinion granting a preliminary injunction, not only did Congress act swiftly to correct the Executive when that branch proposed a radical change to the governing framework, it also understood that the regulations prohibit rate caps. *See NIH*, 164 F.4th at 16 ("Congress went to great lengths [by passing the rider] to ensure that NIH could not displace negotiated indirect cost reimbursement rates with a uniform rate."); *DOE*, 789 F. Supp. 3d at 131 ("Despite Congress' evidenced commitment to the grant funding regime, in February 2025, the current administration tried again" to impose a rate cap.). While the 2017 rider applies to NIH, it shows that Plaintiffs' interpretation of the materially identical DOE regulations is both longstanding and correct (and Defendants' interpretation is both recent and incorrect). The first Trump Administration acknowledged as much: In 2019, the Administration agreed that, through the rider, Congress had prohibited NIH "by law from reducing grantee administrative costs and shifting these resources to support direct research." Off. of Mgmt. & Budget, *A Budget for a Better America: Major Savings and Reforms* 43 (2019), https://www.govinfo.gov/content/pkg/BUDGET-2020-MSV/pdf/BUDGET-2020-MSV.pdf.

It is not surprising, then, that Congress took the same action in response to DOE's Rate Cap Policy. As noted above, Congress recently passed a similar rider to prevent DOE from unilaterally enacting an indirect cost rate cap. *See Commerce, Justice, Science; Energy and Water Development; and Interior and Environment Appropriations Act, 2026*, Pub. L. No. 119-74, § 313,

140 Stat. 5, 89 (Jan. 23, 2026). And its passage prompted DOE to withdraw the Rate Cap Policy four days later. *See* Rate Cap Policy Termination Announcement. But despite that apparent acknowledgement of the rider's effect, Defendants only moved to dismiss their appeal *after* the First Circuit raised the issue of mootness. Order, *AAU v. DOE*, No. 25-1727 (1st Cir. Mar. 10, 2026); Unopposed Mot. to Voluntarily Dismiss Appeal, *AAU v. DOE*, No. 25-1727 (1st Cir. Mar. 11, 2026).

In sum, the string of losses from courts in this District in cases challenging materially similar policies, the myriad legal defects and factual shortcomings identified by this Court, and Congress's rejection of rate caps by directing the Executive to follow the regulations all demonstrate that Defendants' issuance and defense of the Policy were without legal or factual merit and were not substantially justified.

## II. The requested amount of attorneys' fees is reasonable.

AAU requests a total of $266,340.30 in attorneys' fees and costs, as set forth below. The EAJA sets a statutory rate of $125 per hour for attorneys and allows for a cost-of-living adjustment. *See* 28 U.S.C. § 2412(d)(2)(A)(ii). It also permits courts to adjust the hourly rate upward due to a "special factor." *Id*. The Supreme Court has interpreted "special factor" to mean the attorneys in question have "distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation." *See Pierce*, 487 U.S. at 572; *see also, e.g.*, *McDonald*, 693 F. Supp. at 1306 (granting a special factor enhancement where attorneys were "specialists" in an area of law, "educate[d] both the court and the other attorneys" about their area of expertise, and there was a "relative shortage of attorneys possessing" such skills).

### A. The requested rates are reasonable.

An upward adjustment to the statutory rate is warranted here, both to account for the cost of living and given the distinctive knowledge and specialized skill of AAU's attorneys, earned through their work challenging other rate cap policies. Including both adjustments together, AAU requests an attorney rate of $500 per hour for attorneys who have developed "distinctive knowledge [and] specialized skill" in litigating against rate cap policies. AAU requests $266.35 per hour worked in 2025 and $269.28 per hour worked in 2026 for all other attorneys that worked on this litigation.

First, the District of Massachusetts has granted a cost-of-living adjustment in recent cases, *see Conserva v. Kijakazi*, No. 22-cv-10205, 2023 WL 8126660, at *2 (D. Mass. June 23, 2023); *Clement v. Saul*, No. 18-cv-10550, 2020 WL 13558730, at *3 (D. Mass. Mar. 26, 2020), and applying the same formula approved in those cases would bring the updated EAJA hourly rate to $266.35 per hour worked in 2025 and $269.28 per hour worked in 2026.[4]

Second, in addition to expertise and experience in civil litigation and administrative law, certain attorneys involved in this matter had litigated the prior challenge to a materially similar rate cap policy: Lindsay Harrison, Ishan Bhabha, Betsy Henthorne, Steve Englund, Zachary Schauf, and Adam Unikowsky, from Jenner & Block LLP; and Paul Clement and James Xi from Clement & Murphy, PLLC. Declaration of Lindsay C. Harrison, Ex. 2 ¶¶ 5, 7; Declaration of Paul D. Clement, Ex. 3 ¶¶ 5, 7. In the course of that challenge—and two more during the course of the

[4] These rates were calculated by finding the annual CPI-U for the Boston area for 2025 (346.889) and the most recent monthly CPI-U value available for the Boston area for 2026 (March, 350.705), multiplying each value separately by the statutory rate ($125), and dividing each value separately by the CPI-U for the Boston area in March of 1996 (162.8). *See* U.S. Bureau of Labor Statistics, Databases, Tables & Calculators by Subject, https://data.bls.gov/pdq/SurveyOutputServlet?data_tool=dropmap&series_id=CUURS11ASA0,CUUSS11ASA0 (data extracted Apr. 13, 2026) (Boston area CPI-U); *Castaneda-Castillo*, 723 F.3d at 76 (explaining methodology); *Tang*, 689 F. Supp. 2d at 218–19 (same); *Shalan v. Chertoff*, No. 05-cv-10980, 2006 WL 3307512, at *5 n.5 (D. Mass. Nov. 14, 2006) (describing methodology for calculating cost-of-living adjustment for an ongoing year).

DOE litigation—these attorneys developed distinctive knowledge and specialized skills regarding the statutory and regulatory frameworks governing indirect costs, as well as the factual and legal bases for challenging policies limiting such costs, that no other team of attorneys has developed. Ex. 2 ¶ 6; Ex. 3 ¶ 6. These attorneys' experience and expertise made it possible to prepare a complaint, 19 declarations, and a motion for a TRO over the course of a single weekend, which was necessary given the Policy was set to take effect immediately and AAU and its members would have experienced irreparable harm if it had. *See* Policy Flash 2025-22 at 2; *DOE*, 789 F. Supp. 3d at 148–51 (finding irreparable harm should the DOE Rate Cap Policy go into effect); Ex. 2 ¶¶ 4, 6; Ex. 3 ¶¶ 4, 6. Put simply, there was no time to waste. *Cf. Atl. Fish Spotters Ass'n*, 205 F.3d at 492 (noting that "in most cases an otherwise competent lawyer can—albeit at the cost of some extra time—learn enough about the particular controversy to litigate in the area adequately"). The prior experience and specialized skills also permitted those attorneys to bill fewer hours on this litigation than would other lawyers, even those generally familiar with and experienced in APA litigation. This special factor warrants a rate of $500 per hour for the time spent by these attorneys on this litigation, which is substantially less than the hourly rate charged to AAU for their expertise.[5] Ex. 2, ¶ 7; Ex. 3, ¶ 7; Jenner & Block Hours Billed, Ex. 4; Clement & Murphy Hours Billed, Ex. 5.

AAU's requested rate of $95 per hour for paralegals is also reasonable. Courts in this District have approved such a rate in several recent cases. *See, e.g.*, *Conserva*, 2023 WL 8126660, at *3; *Smyth v. Kijakazi*, No. 20-cv-12275, 2021 WL 5771634, at *4 (D. Mass. Dec. 6, 2021); *Cano v. Saul*, 505 F. Supp. 3d 20, 30–31 (D. Mass. 2020); *Blaney v. Saul*, No. 18-cv-12009, 2020

[5] In the alternative, Plaintiff proposes that fees for all attorneys be granted at a rate of $266.35 per hour worked in 2025 and $269.28 per hour worked in 2026, the cost-of-living adjusted rates.

WL 6162944, at *3, *5 (D. Mass. Oct. 21, 2020); *Enos v. Saul*, No. 19-cv-10023, 2020 WL 6082127, at *1 n.4 (D. Mass. Oct. 15, 2020).

**B. The number of hours is reasonable.**

The number of hours billed by the attorneys and paralegals in this case is reasonable in light of the complexity of the issues, the existential stakes for AAU and its members, and the complete relief obtained. While AAU's attorneys have distinctive knowledge and specialized skill and experience litigating challenges to agency actions limiting indirect cost rates, this challenge still required in-depth research and extensive briefing on a complicated interlocking statutory and regulatory scheme. The scale and implementation timeline of the Rate Cap Policy—which purported to take effect immediately—required a large team of attorneys to quickly prepare and file a complaint; compile evidence presented in 20 separate, comprehensive declarations; and prepare and file multiple briefs on an abbreviated timeline, all in order to protect hundreds of millions of dollars in funding for AAU's members. *See* Dkt. 19 at 12; Ex. 2 ¶¶ 4, 6; Ex. 3 ¶¶ 4, 6. In addition to preparing briefs and evidentiary filings, time reasonably spent on this matter included negotiations with Defendants over implementation of the Policy; preparation for and presentation of oral argument; strategy and correspondence regarding the government's appeal; and preparation of this fee and costs petition. The efficacy of the time spent was demonstrated by the full relief achieved in this case.

* * *

As set forth in the attached declarations and charts of time entries, AAU seeks fees for 279.55 hours of attorney time at a rate of $500 per hour (for a total of $139,775.00), 456.45 hours of attorney time at a rate of $266.35 per hour for hours worked in 2025 and $269.28 per hour for hours worked in 2026 (for a total of $121,599.06), and 43.4 hours of paralegal time at a rate of $95

per hour (for a total of $4,123.00).[6] *See* Summary of Hours and Fees Chart, Ex. 6; Ex. 4; Ex. 5. AAU also seeks costs of $843.24 associated with providing copies of the appellate brief to the First Circuit. Ex. 5; *see* 28 U.S.C. § 2412(a)(1) ("[A] judgment for costs . . . may be awarded to the prevailing party."). This request is reasonable and should be granted pursuant to the EAJA.

## CONCLUSION

For the reasons outlined above, AAU respectfully requests that this Court grant its motion and award attorneys' fees and costs under the EAJA in the amount of $266,340.30.

Dated: April 15, 2026

Respectfully submitted,

JENNER & BLOCK LLP

By: */s/ Lindsay C. Harrison*

Lindsay C. Harrison (*pro hac vice*)
Ishan K. Bhabha (*pro hac vice*)
Lauren J. Hartz (*pro hac vice*)
Elizabeth Henthorne (*pro hac vice*)
Anjali Motgi (*pro hac vice*)
Zachary C. Schauf (*pro hac vice*)
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Tel: (202) 639-6000
IBhabha@jenner.com
LHarrison@jenner.com
LHartz@jenner.com
BHenthorne@jenner.com
AMotgi@jenner.com
ZSchauf@jenner.com

Shoba Pillay, BBO No. 659739
353 N Clark Street
Chicago, IL 60654
Tel: (312) 222-9350
SPillay@jenner.com

*Attorneys for All Plaintiffs*

CLEMENT & MURPHY, PLLC

By: */s/ Paul D. Clement*

Paul D. Clement (*pro hac vice*)
James Y. Xi (*pro hac vice*)
Kyle R. Eiswald (*pro hac vice*)
706 Duke Street
Alexandria, VA 22314
Tel: (202) 742-8900
paul.clement@clementmurphy.com
james.xi@clementmurphy.com
kyle.eiswald@clementmurphy.com

*Attorneys for Association of American Universities, Association of Public and Land-grant Universities, and American Council on Education*

[6] AAU reserves its right to request additional fees for as-of-yet unbilled work carried out as part of this fee proceeding.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of April, 2026, I caused the foregoing to be electronically filed with the clerk of the court for the U.S. District Court for the District of Massachusetts, by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, a true and correct copy of the foregoing instrument, and all attachments.

*/s/ Lindsay C. Harrison*
Lindsay C. Harrison (*pro hac vice*)
Jenner & Block LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Tel: (202) 639-6000
LHarrison@jenner.com