**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| ASSOCIATION OF AMERICAN UNIVERSITIES, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:25-cv-10912-ADB |
| v. | ) ) | |
| DEPARTMENT OF ENERGY, *et al.*, | ) ) | |
| Defendants. | ) | |

**DEFENDANTS' OPPOSITION TO ASSOCIATION OF AMERICAN
UNIVERSITIES' MOTION FOR ATTORNEYS' FEES AND COSTS
<u>PURSUANT TO THE EQUAL ACCESS TO JUSTICE ACT</u>**

**TABLE OF CONTENTS**

BACKGROUND ........................................................................................................................ 1

LEGAL STANDARD ............................................................................................................... 3

ARGUMENT ............................................................................................................................ 3

    I.    AAU Has Not Carried its Burden to Prove EAJA Eligibility ........................................... 4

    II.    A Fee Award is Not Warranted ...................................................................................... 5

        A.    The United States' position was substantially justified. .................................................. 5

        B.    Special circumstances make an award unjust. ............................................................. 12

    III.    AAU's Fees Should Be Reduced ................................................................................... 15

        A.    AAU has not shown it is entitled to an increased hourly fee. ....................................... 15

        B.    The number of hours should be reduced. ..................................................................... 17

CONCLUSION ....................................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Association of American Universities v. Department of Defense*,
806 F. Supp. 3d 79 (D. Mass. 2025) ................................................................. 5, 8, 11

*Association of American Universities v. National Science Foundation*,
788 F. Supp. 3d 106 (D. Mass. 2025) ............................................................... 4, 8, 11

*Ardestani v. I.N.S.*,
502 U.S. 129 (1991) ......................................................................................... 3

*Aronov v. Napolitano*,
562 F.3d 84 (1st Cir. 2009) .............................................................................. 1, 9

*Atl. Fish Spotters Ass'n v. Daley*,
205 F.3d 488 (1st Cir. 2000) ............................................................................ 15

*Bowey v. West*,
218 F.3d 1373 (Fed. Cir. 2000) ........................................................................ 10

*Broaddus v. U.S. Army Corps of Eng'rs*,
380 F.3d 162 (4th Cir. 2004) ........................................................................... 3

*Calhoun v. Acme Cleveland Corp.*,
801 F.2d 558 (1st Cir. 1986) ............................................................................ 19

*California v. U.S. Department of Education*,
132 F.4th 92 (1st Cir. 2025) ............................................................................. 9

*Cano v. Saul*,
505 F. Supp. 3d 20 (D. Mass. 2020) ................................................................. 19

*Comm'r, I.N.S. v. Jean*,
496 U.S. 154 (1990) ......................................................................................... 3, 6

*Dantran, Inc. v. U.S. Dep't of Labor*,
246 F.3d 36 (1st Cir. 2001) .............................................................................. 11, 12

*E.E.O.C. v. AutoZone, Inc.*,
934 F. Supp. 2d 342 (D. Mass. 2013) ............................................................... 18, 20

*Ewing v. Rodgers*,
826 F.2d 967 (10th Cir. 1987) .......................................................................... 13

*FDA v. Alliance for Hippocratic Medicine*,
  602 U.S. 367 ................................................................................................................... 8

*Gay Officers Action League v. Puerto Rico*,
  247 F.3d 288 (1st Cir. 2001)........................................................................................ 20

*Griffith v. Comm'r of Soc. Sec.*,
  987 F.3d 556 (6th Cir. 2021) ........................................................................................ 10

*Lackey v. Stinnie*,
  604 U.S. 192 (2025)....................................................................................................... 10

*Lewis v. Sec'y of Health & Hum. Servs.*,
  370 F. Supp. 3d 267 (D. Mass. 2019) .......................................................................... 16

*Lipsett v. Blanco*,
  975 F.2d 934 (1st Cir. 1992)......................................................................................... 19

*Louisiana ex rel. Guste v. Lee*,
  853 F.2d 1219 (5th Cir. 1988) ................................................................................ 13, 14

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)......................................................................................................... 8

*Mason v. Me. Dep't of Corr.*,
  387 F. Supp. 2d 57 (D. Me. 2005) ................................................................................ 17

*Massachusetts v. Nat'l Insts. of Health*,
  770 F. Supp. 3d 277 (D. Mass. 2025) ............................................................................ 7

*Michel v. Mayorkas*,
  68 F.4th 74 (1st Cir. 2023)......................................................................................... 6, 7

*Miller v. Holzmann*,
  575 F. Supp. 2d 2 (D.D.C. 2008) .................................................................................. 20

*Nat'l Ass'n of Mfrs. v. Dep't of Labor*,
  159 F.3d 597 (D.C. Cir. 1998)................................................................................... 4, 5

*Nat'l Truck Equip. Ass'n v. Nat'l Highway Traffic Safety Admin.*,
  972 F.2d 669 (6th Cir. 1992) ........................................................................................ 13

*New Jersey v. EPA*,
  703 F.3d 110 (D.C. Cir. 2012) ...................................................................................... 19

iii

*N.H. Hosp. Ass'n v. Azar*,
No. 15-cv-460, 2019 WL 1406631 (D.N.H. Mar. 28, 2019) ................................................... 19

*Omni Packaging, Inc. v. U.S. I.N.S.*,
940 F. Supp. 42 (D.P.R. 1996) ................................................................................................. 10

*Pierce v. Underwood*,
487 U.S. 552 (1988) ................................................................................................... 6, 16, 17

*Roanoke River Basin Ass'n v. Hudson*,
991 F.2d 132 (4th Cir. 1993) ................................................................................................... 12

*Saysana v. Gillen*,
614 F.3d 1 (1st Cir. 2010) ...................................................................................... 6, 7, 8, 10, 11

*Scarborough v. Principi*,
541 U.S. 401 (2004) ................................................................................................................... 1

*Schock v. United States*,
254 F.3d 1 (1st Cir. 2001) .................................................................................................... 5, 10

*Sierra Club v. Sec. of Army*,
820 F.2d 513 (1st Cir. 1987) ................................................................................................... 12

*Sierra Club v. U.S. Army Corps of Engineers*,
776 F.2d 383 (2d Cir. 1985) ................................................................................................... 14

*Sinclair v. Berryhill*,
284 F. Supp. 3d 111 (D. Mass. 2018) ..................................................................................... 17

*Sloan v. Pugh*,
351 F.3d 1319 (10th Cir. 2003) ............................................................................................... 13

*Torres-Rivera v. Espada-Cruz*,
No. 99-1272, 2007 WL 906176 (D.P.R. Mar. 22, 2007) ........................................................ 18

*Torres-Rivera v. O'Neill-Cancel*,
524 F.3d 331 (1st Cir. 2008) ................................................................................................... 18

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) ................................................................................................................... 9

*United States v. 1,378.65 Acres of Land*,
794 F.2d 1313 (8th Cir. 1986) ................................................................................................. 12

iv

*Wild Fish Conservancy v. Thom*,
    No. C20-417, 2025 WL 3259740 (W.D. Wash. May 19, 2025)............................... 20

*Williams v. Barnhart*,
    206 Fed. App'x 378 (5th Cir. 2006) ....................................................................... 16

**Statutes**

28 U.S.C. § 2412............................................................................................................ 1

28 U.S.C. § 2412(d)(1)(A)..................................................................................... 3, 5, 12

28 U.S.C. § 2412(d)(2)(A)............................................................................................. 3

41 U.S.C. § 4708............................................................................................................ 7

42 U.S.C. § 7256............................................................................................................ 7

42 U.S.C. § 7256(a) ....................................................................................................... 7

*Commerce, Justice, Science; Energy and Water Development; and Interior and*

*Environment Appropriations Act, 2026*, Pub. L. No. 119-74, § 313, 140 Stat.

5, 89................................................................................................................................ 2

Plaintiff Association of American Universities' ("AAU") motion for attorney fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, should be denied.  Congress enacted EAJA "to ensure that certain individuals . . . will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved."  *Aronov v. Napolitano*, 562 F.3d 84, 88 (1st Cir. 2009) (en banc) (quoting *Scarborough v. Principi*, 541 U.S. 401, 407 (2004)).  AAU, essentially a trade association with member institutions of higher education ("IHEs") that face no financial barriers to contesting government action, is not entitled to attorney fees under EAJA because AAU has not proven its eligibility, the position of the United States was substantially justified, and other circumstances make an award unjust.  If the Court decides to award fees, the fee award should be reduced to $116,492.58 to account for rates that exceed the statutory cap and various objectionable billing records practices.

## BACKGROUND

On April 11, 2025, to support the Department of Energy's (the "DoE") mission of maximizing research outcomes and acting as a steward of taxpayers' money, the DOE announced a new policy (the "Policy") establishing that going forward, all grants awarded to IHEs would default to a 15 percent indirect cost rate.  Policy Flash 2025-22: Adjusting Department of Energy Grant Policy for Institutions of Higher Education (Apr. 11, 2025).  The DOE selected this rate to "better balance the Department's twin aims of funding meaningful research and upholding its fiduciary duties to the American people."  *Id.* at 2.  The Policy also provided that, subject to separate notice and guidance, and consistent with these goals, the DOE intended to terminate grants that did not conform to its updated policy.  *Id.*

1

On April 14, 2025, AAU, two other organizations,[1] and nine IHEs (collectively "Plaintiffs") jointly filed this litigation to challenge the Policy.  Doc. No. 1.  That same day, Plaintiffs moved for a temporary restraining order ("TRO"), Mot. for TRO, Doc. No. 3, which the Court granted, TRO, Doc. No. 34.  After briefing on the TRO Motion, on May 15, 2025, the Court issued a 49-page memorandum and order granting a preliminary injunction.  Doc. No. 62.  Just over a month later, on June 27, 2025, the DOE moved for entry of final judgment based on the Court's May 15, 2025, order.  Doc. No. 68.  The Court granted that motion, and the DOE subsequently appealed.  Doc. No. 72.

Almost seven months later, while the appeal was still pending, Congress passed the Commerce, Justice, Science; Energy and Water Development; and Interior and Environment Appropriations Act, 2026, which mandated that "the Department of Energy shall continue to apply the indirect cost rates, including negotiated indirect cost rates . . . including with respect to the approval of deviations from negotiated indirect cost rates, to the same extent and in the same manner as was applied in fiscal year 2024." Pub. L. No. 119-74, § 313, 140 Stat. 5, 89 (Jan. 23, 2026).  Four days later, on January 27, 2026, the DOE announced that it had terminated the Policy.  Nine days after that announcement, the DOE filed its reply in the appeal in accordance with the appellate court's case management order.  Then, shortly thereafter, the DOE filed an unopposed motion to dismiss its appeal.  Unopposed Mot. to Voluntarily Dismiss Appeal, *AAU v. DOE*, No. 25-1727 (1st Cir. Mar. 11, 2026).  The motion indicated that the parties would bear

---

[1] The other two organizations are American Council on Education ("ACE") and the Association of Public and Land-grant Universities ("APLU").  ACE is composed of more than 1,600 IHEs and related organizations.  Doc. No. 2-2 at ¶ 3.  APLU is composed of more than 230 IHEs and affiliates.  Doc. No. 2-3 at ¶ 3.

their own costs.  *Id.*  The First Circuit granted the motion and dismissed the appeal.  Judgment, *AAU v. DOE*, No-25-1727 (1st Cir. Mar. 16, 2026)

On April 15, 2026, AAU filed the instant motion for an EAJA award, requesting $266,340.30 for 279.55 hours of attorney time at $500 per hour, 456.45 hours of attorney time at $266.35 per hour for hours worked in 2025 and $269.28 per hour for hours worked in 2026, and 43.4 hours of paralegal time at $95 per hour.  *See* Pl.'s Mem. in Supp. of Mot. for Att'ys' Fees, Doc. No. 79 at 20–21.  AAU also seeks $843.24 for costs incurred during the appeal.  *Id.* at 21.

## LEGAL STANDARD

An award of fees under EAJA is only warranted where (1) the applicant is eligible and is a prevailing party; (2) the government fails to establish that its position, viewed over the entire course of the dispute, was substantially justified; (3) no special circumstances exist to make an award unjust; and (4) the petition is timely.  28 U.S.C. § 2412(d)(1)(A)–(B); *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 158 (1990).  Even where warranted, the fees must be reasonable.  28 U.S.C. § 2412(d)(2)(A).  Because EAJA functions as a partial waiver of sovereign immunity by making the United States liable for fees, it "must be strictly construed in favor of the United States." *Ardestani v. I.N.S.*, 502 U.S. 129, 137 (1991).  The applicant bears the burden of proving eligibility.  *See, e.g.*, *Broaddus v. U.S. Army Corps of Eng'rs*, 380 F.3d 162, 168 (4th Cir. 2004).

## ARGUMENT

AAU is not entitled to fees under EAJA for three reasons.  First, AAU has not shown it is eligible for fees.  Second, the United States was substantially justified in its position that the DOE's governing statutes and regulations authorized the DOE to limit reimbursement of indirect costs in grants awarded to IHEs.  Third, because this case is ultimately litigated by and for large IHEs without cost restraints, special circumstances exist to make an EAJA award unjust.  Even if

3

the Court were to award fees to AAU under EAJA, the fees should be reduced to account for rates that exceed the statutory cap and for various objectionable billing records practices.

### I.    AAU Has Not Carried its Burden to Prove EAJA Eligibility

Although 501(c)(3) membership organizations can be eligible to recover EAJA fees when just, if there is an "agreement by any of [AAU's] members to pay the costs of this litigation," then AAU itself is not an eligible party under EAJA. *Nat'l Ass'n of Mfrs. v. Dep't of Labor*, 159 F.3d 597, 603 (D.C. Cir. 1998). This is because eligibility for EAJA fees turns on whether the "real party in interest" is eligible. *See id.* The "real party in interest" is the party that ultimately bears the costs of the litigation. *Id.* This doctrine "may properly extend to an ineligible non-party (such as an association member) who pays the fees of a party (such as an association)." *Id.* Here, for example, if some subset of ineligible universities is paying for the litigation through AAU, then the funding universities would be the real parties in interest rather than AAU. *See id.* EAJA does not allow ineligible plaintiffs to subsidize litigation with taxpayer dollars by funneling payments through a 501(c)(3) membership organization.

AAU's motion for attorneys' fees falls short of establishing that it was AAU itself, and not its ineligible members, that funded the claimed attorney's fees. AAU provides only that "AAU was *responsible* for all Plaintiffs' attorneys' fees and costs for this litigation." Doc. No. 78-1 ¶ 1 (emphasis added). According to publicly available tax data, however, AAU had $2,570,599 in cash on hand at the end of 2024. Ex. B at 11. AAU's EAJA motions submitted in other cases indicate that it paid its attorneys more than twice that amount – at least $6,331,043.78 – across the four indirect cost cases in the past year for which AAU has sought fees under EAJA.[2] AAU's imprecise declaration stating it is "responsible" for fees and costs, considered in

---

[2] Doc. No. 78-4 (listing Jenner & Block's total bill at $674,808.50); Doc. No. 78-5 (EAJA Mot., cumulatively listing Clement and Murphy's total bill as at least $424,450); Doc. No. 90-3 at 16,

light of public record data, suggests that AAU was not the "real party in interest" and is insufficient to prove EAJA eligibility. *See Nat'l Ass'n of Mfrs.*, 159 F.3d at 603. *National Association of Manufacturers* is instructive. There, unlike here, the association submitted a sworn declaration that "[t]here was no agreement by any of [its] members to pay the costs of [the] litigation," and that fees "would have been paid out of the association's general operating budget." *Id.*

Prior to filing this opposition, the United States asked AAU to provide additional detail about the funding for the litigation, consistent with the declaration in *National Association of Manufacturers*. AAU asserted that the information is not "relevant to the statutory eligibility criteria." Thus, contemporaneous with this opposition, the United States is filing a motion for leave to serve two interrogatories aimed at determining whether AAU is the real party in interest for eligibility purposes.[3] Without further information, though, AAU has not met its burden to demonstrate its eligibility to receive an EAJA fee award and its motion should be denied.

## II. A Fee Award is Not Warranted

### A. The United States' position was substantially justified.

EAJA does not authorize fee awards when "the position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A). To meet this standard, the government's

---

*AAU v. NSF*, No. 1:25-cv-11231 (D. Mass. June 20, 2025) (listing Jenner & Block's total bill at $1,251,201.78); Doc. No. 90-5 at 1–5, *AAU v. NSF*, No. 1:25-cv-11231 (D. Mass. June 20, 2025) (cumulatively listing Clement and Murphy's total bill as at least $67,612.5); Doc. No. 98-4 at 28, *AAU v. DOD*, 1:25-cv-11740 (D. Mass. Oct. 10, 2025) (listing Jenner & Block's total bill at $1,921,415.75); Doc. No. 98-5 at 2–11, *AAU v. DOD*, 1:25-cv-11740 (D. Mass. Oct. 10, 2025) (cumulatively listing Clement and Murphy's total bill as at least $131,486); Doc. No. 108-3 at 12, *AAU v. HHS*, No. 1:25-cv-10346 (D. Mass. Mar. 5, 2025) (listing Jenner & Block's total bill at $1,147,925.50); Doc. No. 108-5 at 2–11, *AAU v. HHS*, No. 1:25-cv-10346 (D. Mass. Mar. 5, 2025) (cumulatively listing Clement and Murphy's total bill as at least $712,143.75).

[3] The United States respectfully reserves the right to lodge any relevant facts it uncovers either through AAU's voluntary responses or responses to interrogatories, should the Court grant leave.

position need not have prevailed.  *See, e.g.*, *Schock v. United States*, 254 F.3d 1, 5 (1st Cir. 2001) ("The mere fact that the government does not prevail is not dispositive on the issue of substantial justification.").  It need not even have been "justified to a high degree."  *Saysana v. Gillen*, 614 F.3d 1, 5 (1st Cir. 2010) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).  Rather, the government's position is "substantially justified" if it was "justified in substance or in the main." *Id.* (quoting *Pierce*, 487 U.S. at 565).  The government therefore only needs to show by a preponderance of the evidence that its position had "a reasonable basis in law and fact."  *Id.* at 6. The government's "position" in this context is its "case as an inclusive whole, rather than as atomized line-items."  *Id.* at 5 (quoting *Comm'r, I.N.S.*, 496 U.S. at 161–62).  When analyzing substantial justification, the court must "arrive at one conclusion that simultaneously encompasses and accommodates the entire civil action."  *Id.* (citation omitted).

The crux of the DOE's position in this case was that the Policy was a lawful exercise of the DOE's discretionary grantmaking authority.  That core position underlays the DOE's arguments that the Court lacked jurisdiction under the Administrative Procedure Act ("APA"), that the Policy was authorized by statute, and that the Policy complied with the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards (the "Guidance") issued by the Office of Management and Budget ("OMB").  *See* Doc. No. 47 at 14– 16, 18–27, 30–32; *see also Saysana*, 614 F.3d at 3, 6 (government's "position" was issue occupying "the lion's share of the Government's brief").  That position was substantially justified for at least two reasons.

*First*, the issue of the DOE's authority to cap indirect costs is a matter of first impression. "When an issue before the court is novel and has little to no precedent, 'courts have found that an award of EAJA fees is not warranted.'"  *Michel v. Mayorkas*, 68 F.4th 74, 79 (1st Cir. 2023)

6

(quoting *Saysana*, 614 F.3d at 6).  Here, as in *Michel*, the First Circuit had not previously determined the scope of the DOE's authority to cap costs in grants or analyzed the Guidance's mechanism for deviating from negotiated indirect cost rates.  *See id.* at 79.  Moreover, only one district court had considered an indirect costs cap issued by any federal agency at all.  *See Massachusetts v. NIH*, 770 F. Supp. 3d 277 (D. Mass. 2025).  That court's decision was preliminary in nature and focused heavily on an appropriations rider specific to the agency, which did not apply to the DOE.  *Id.* at 299–303.  The DOE therefore was substantially justified in issuing the Policy and defending this litigation.  *See Saysana*, 614 F.3d at 6 (government is justified in "seek[ing] specific instruction from the court" on an issue "of first impression among the courts of appeals").[4]

*Second*, the DOE's position had a reasonable basis in law.  The DOE reasonably considered that its organic statute, 42 U.S.C. § 7256, provided it the discretion necessary to implement the Policy.  *See id.* at 15–16.  On its face, section 7256 gives the DOE broad discretion to allocate its appropriations among research grants that it deems "necessary or appropriate to carry out functions vested in the Secretary."  42 U.S.C. § 7256(a).  The DOE further argued that Congress has authorized the use of predetermined indirect cost rates in grants issued to IHEs through 41 U.S.C. § 4708.  That provision provides that a "cost-type research and development" grant issued to an IHE "may provide for payment of reimbursable indirect costs on the basis of predetermined fixed percentage rates applied to . . . reimbursable direct costs

---

[4] The First Circuit's ruling in *Massachusetts v. National Institutes of Health*, 164 F.4th 1 (1st Cir. 2026), does not affect this conclusion. The DOE issued the Policy more than half a year before the First Circuit's ruling, which was the first opinion from a circuit court considering the indirect cost rate cap of any agency.  The First Circuit's opinion also hinged on a congressional appropriations rider specific to NIH and NIH's application of the cap to all awards instead of a specific class. *See id.*

incurred." 41 U.S.C. § 4708. At the time the DOE adopted the Policy, no court had held that either provision barred the DOE from utilizing indirect cost rate caps.[5]

Though the Court need only consider this core position, *see Saysana*, 614 F.3d at 5–6, other aspects of the case underscore that the DOE's position with respect to the case as a whole was reasonable. *First*, the DOE reasonably challenged Plaintiffs' theory of associational standing. Doc. No. 47 at 17–18. Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III" and "an indispensable part of the plaintiff's case," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992), and at least one Justice has expressed grave concerns with associational standing, *see FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 399–403 (Thomas, J., concurring) (noting that "[a]ssociational standing raises constitutional concerns by relaxing both the injury and redressability requirements for Article III standing").

*Second*, the DOE's view that the Policy was issued in a way that was not arbitrary and capricious was substantially justified because the Policy acknowledged it changed the DOE's preexisting policy, explained the reason for the change, and accounted for reliance interests. *See* Doc. No. 47 at 25–26.

*Third*, the DOE reasonably argued that any preliminary injunction should be narrowly tailored. While the Court ultimately rejected the DOE's argument, it did so "despite awareness that some members of the Supreme Court have expressed concerns about the use of nationwide or 'universal' injunctions. . . ." *AAU v. DOE*, 789 F. Supp. 3d 118, 152 (D. Mass. 2025). Barely

---

[5] The United States made similar arguments in defense of the indirect cost rate polices implemented by the Department of Defense ("DoD") and the National Science Foundation ("NSF"). In the DoD case, the district court declined to consider whether section 4708 barred DoD's imposition of its new indirect rate cap policy. *AAU v. DoD*, 806 F. Supp. 3d at 102 & 107 n.73. The district court similarly declined to decide the issue in *NSF*. *AAU v. NSF*, 788 F. Supp. 3d 106, 131 (D. Mass. 2025). Neither decision was issued prior to the DOE's announcement of the Policy.

a month later, the Supreme Court issued its opinion in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), holding that the federal judiciary has no power to issue universal injunctions under the Judiciary Act of 1789.  *Id.* at 841.

*Fourth*, the DOE also appropriately raised the jurisdictional boundary between the APA and the Tucker Act, emphasizing that the Supreme Court's then-most recent decision on the Tucker Act, *California v. U.S. Department of Education,* 132 F.4th 92 (1st Cir. 2025), required the Court to dismiss for lack of subject matter jurisdiction.  Doc. No. 47 at 6–9.  Though the Court disagreed, in doing so, the Court noted that "[i]t may well be that these distinctions would not differentiate this case from *California* in the eyes of the Supreme Court . . . ."  *DOE*, 789 F. Supp. 3d at 134.  It also acknowledged that the "precise contours" of the boundary between the Tucker Act and APA "remain elusive."  *Id.* at 132; *see also NIH*, 770 F. Supp. 3d at 292 (noting that "the bright-line rule between monetary and equitable relief in the Tucker Act–APA context turns out to be rather dim").

*Finally*, the DOE cooperated to efficiently resolve this litigation, with just more than two months elapsing between the Plaintiffs filing their complaint and final judgment.  Doc. Nos. 1, 71.  And the DOE dismissed its appeal once a policy change mooted the case.  *See* Unopposed Mot. to Voluntarily Dismiss Appeal, *AAU v. DOE*, No. 25-1727 (1st Cir. Mar. 11, 2026).  Taken together, these positions and actions emphasize that, when considered holistically, the DOE's position in the case was substantially justified.

In contrast, AAU's reductive focus on a few of the Court's individual findings and the DOE's policy issuance process, *see* Doc. No. 79 at 12–17, misses the mark.  By focusing on "whether the agency was right or wrong," AAU evinces a "fundamental misapprehension of what substantially justified means."  *Aronov*, 562 F.3d at 94–95.  For the reasons discussed

above, the DOE's position under the EAJA was substantially justified.  Whether it was also successful is immaterial, and any lack of justification on any discrete issue does not subvert the reasonableness of the DOE's position in the case as a whole.  *See Omni Packaging, Inc. v. U.S. I.N.S.*, 940 F. Supp. 42, 46 (D.P.R. 1996) (agency action suffering from a "defect in crafting or execution," such as "an inadequate explanation," may still be substantially justified); *Griffith v. Comm'r of Soc. Sec.*, 987 F.3d 556, 572 (6th Cir. 2021) (one argument's lack of substantial justification did "not undermine the reasonableness of the government's position as a whole").

Additionally, no "string of losses" weighed against the DOE's position at the time of the Policy's adoption.  Doc. No. 79 at 17.  Substantial justification is measured "at the time the government adopted its position," not when "the EAJA motion is decided."  *Bowey v. West*, 218 F.3d 1373, 1377 (Fed. Cir. 2000).  When DOE adopted the Policy on April 11, 2025, only the *NIH* session had preliminarily considered the merits of the government's position on a different policy.  *See NIH*, 770 F. Supp. 3d at 287.  One preliminary decision is not a "string of losses." *Schock v. United States*, 254 F.3d 1, 6 (1st Cir. 2001) ("Whether one court agreed or disagreed with the government does not establish that the government's position was not substantially justified."); *see also Saysana*, 614 F.3d at 6 n.2 (two district court decisions issued less than two months apart did not make it "unreasonable for the Government to continue to question their reasoning").  Further, the NIH decision *was not a final decision. Lackey v. Stinnie*, 604 U.S. 192, 200 (2025) (noting that "[p]reliminary injunctions . . . do not conclusively resolve legal disputes" because their purpose "is merely to preserve the relative positions of the parties until a trial on the merits can be held").  And the *NIH* decision focused on an appropriations rider inapplicable

to the DOE. *NIH*, 770 F. Supp. 3d at 299–303. Lack of substantial justification under the EAJA demands more.[6]

The intervening district court decisions in *NSF* and *DoD* should not factor into the analysis. AAU's suggestion that the government is not justified in maintaining an appeal to the circuit court if additional sessions of the same district court rule against the government while the appeal is pending is without merit. Doc. No. 79 at 13. The only case cited by AAU does not suggest otherwise, as it deals only with intervening *factual findings* adverse to the government. *Dantran, Inc. v. U.S. Dep't of Labor*, 246 F.3d 36, 41, 44 (1st Cir. 2001). Here, unlike in *Dantran*, the intervening occurrences were not "unassailable" factual findings specific to that case, *id.*, but district court legal decisions that the First Circuit could review *de novo*. *See AAU v. NSF*, 788 F. Supp. 3d 106, 138–44 (D. Mass. 2025); *AAU v. DOD*, 806 F. Supp. 3d 79, 120–25 (D. Mass. 2025). Those two district court decisions did not affect the reasonableness of maintaining the DOE's appeal to the First Circuit.

And shortly after the First Circuit spoke on the issue of indirect cost rates in the *NIH* appeal, and Congress passed a new appropriations rider targeting the DOE's use of indirect cost rate caps, the DOE moved to dismiss its appeal. Unopposed Mot. to Voluntarily Dismiss Appeal, *AAU v. DOE*, No.25-1727 (1st Cir. Mar. 11, 2026). In sum: the DOE agreed to convert a memorandum and order granting a preliminary injunction into a final judgment to expedite disposition of the case. Then, once intervening events mooted the case, the DOE dismissed its appeal, saving all parties the expense of unnecessary litigation.

---

[6] Although the government moved to convert the *NIH* and *DOE* decisions into final judgments, it did so to promptly appeal those decisions. *See* Defs.' Mot. to Convert, *Massachusetts v. NIH*, No. 1:25-cv-10338-AK, Doc. No. 108, at 2 (D. Mass. Apr. 4, 2025); Unopposed Mot. Final J., Doc. No. 68 at 1, *AAU v. DOE*, No. 1:25-cv-10912-ADB (D. Mass. June 27, 2025).

Finally, even if the DOE's short litigation after the First Circuit decided *NIH* was not substantially justified, the Court "must 'arrive at one conclusion that simultaneously encompasses and accommodates *the entire civil action*.'" *Saysana v. Gillen*, 614 F.3d 1, 6 (1st Cir. 2010) (quoting *Dantran*, 246 F.3d at 41) (emphasis added).  Taking a few weeks to consider whether to dismiss its appeal after almost a year of litigation is not sufficient to render the government's overall position not substantially justified.  *See, e.g.*, *Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 139 (4th Cir. 1993) (rejecting "the view that *any* unreasonable position taken by the government in the course of litigation automatically opens the door to an EAJA fee award") (emphasis in original).  This is particularly true where, as here, the DOE's decision to continue litigating after the First Circuit's decision in *NIH* caused Plaintiffs' attorneys to expend a mere 19.65 additional hours on the case.  Doc. No. 78-4 at 7; Doc. No. 78-5 at 11–13.  Indeed, Plaintiffs' attorneys filed nothing in the First Circuit after the NIH decision.

B.  <u>Special circumstances make an award unjust.</u>

In any event, an EAJA fee award is not warranted where "special circumstances make an award unjust."  28 U.S.C. § 2412(d)(1)(A).  Even if the court finds that AAU sufficiently showed that it is statutorily eligible for EAJA fees, AAU is a lobbyist organization "composed of America's leading research universities."  Doc. No. 2-1 at ¶ 3.  It is suing on behalf of its members, who had standing to sue in their own right.  *See NSF*, 788 F. Supp. 3d at 125.  And AAU is joined in this litigation by nine of the leading research universities in the United States.  Doc. No. 1 at 1.  But the "EAJA is designed to 'encourage relatively *impecunious* private parties to challenge abusive or unreasonable governmental behavior by relieving such parties of the fear of incurring large litigation expenses.'" *Sierra Club v. Sec. of Army*, 820 F.2d 513, 516–17 (1st Cir. 1987) (citing *United States v. 1,378.65 Acres of Land*, 794 F.2d 1313, 1315–16 (8th Cir. 1986)) (emphasis added).  Moreover, "in special circumstances the participation of a party

12

ineligible for EAJA fees may make a fee award for other eligible parties unjust." *Louisiana ex rel. Guste v. Lee*, 853 F.2d 1219, 1225 (5th Cir. 1988).  AAU is far from an impecunious party.  And it is joined by deep-pocketed parties that, regardless of their status as 501(c)(3) organizations, almost certainly employ more than 500 employees, rendering them ineligible for EAJA fees.  As such, even if AAU is technically eligible, a fee award is unwarranted.

EAJA's legislative history compels this conclusion.  Congress enacted EAJA to address concerns that parties would be deterred from challenging "unreasonable governmental action because of the expense involved in securing the vindication of their rights.  The economic deterrents to contesting government action are magnified in these cases by the disparity between the resources and expertise of these individuals and their government."  H.R. Rep. No. 96-1418, at 4984 (1980).  In other words, "[t]he underlying assumption of the EAJA is that the cost of litigation is a barrier to contesting improper government action."  *Sloan v. Pugh*, 351 F.3d 1319, 1322–23 (10th Cir. 2003) (quoting *Ewing v. Rodgers*, 826 F.2d 967, 970–71 (10th Cir. 1987)).

An EAJA award is not warranted in this case because the cost of litigation is not a barrier to the courts for AAU (or any other Plaintiff here).  Even without the EAJA award, AAU (and its members) purportedly possess the financial means to procure "a large team of attorneys," Doc. No. 79 at 20, across two law firms.  *Id.* at 21.  Awarding EAJA fees to parties with the "economic power to pursue litigation against the government without being deterred by the costs" undermines the congressional purposes of EAJA, and the "same result occurs when a trade association's membership also contains a number of companies who can readily afford the costs to protect their own interests."  *See Nat'l Truck Equip. Ass'n v. Nat'l Highway Traffic Safety Admin.*, 972 F.2d 669, 674 (6th Cir. 1992) (declining to award EAJA fees to trade organization representing businesses ineligible to receive EAJA awards).

13

Furthermore, nine of the Plaintiffs are IHEs without significant financial constraints who almost certainly employee more than 500 people.  As such, their "participation poses a special problem in this case." *Louisiana*, 853 F.2d at 1223.  In *Louisiana*, the Fifth Circuit found that "participation of a party ineligible for EAJA fees may make a fee award for other eligible parties unjust," so when "parties eligible for EAJA fees join parties ineligible for EAJA fees, the district court must account for the free-rider problems that will inevitably exist." *Id.* at 1225.  In reaching this conclusion, the Fifth Circuit analyzed *Sierra Club v. U.S. Army Corps of Engineers*, 776 F.2d 383 (2d Cir. 1985), in which the Second Circuit considered whether courts should attribute one plaintiff's ineligibility under EAJA to all plaintiffs.  The *Sierra Club* majority directed the district court to "determine the number of eligible plaintiffs and award fees based on the ratio of eligible plaintiffs to total plaintiffs." *Id.* at 393.  The concurrence went even further, observing that "[t]he EAJA was passed for a specific purpose; to ensure that parties would not be prevented from contesting government action simply because they could not afford to litigate the matter.  When a group of twelve plaintiffs, one of whom has a net worth of over $1 million, join together, congressional concern about access to the courts is not implicated." 776 F.2d at 394 (Meskill, J. concurring).  "Indeed, it seems incongruous to hold that if the ineligible plaintiff alone challenged [the agency action], fees could not be awarded under EAJA, but because the ineligible plaintiff was joined by less wealthy friends, fees may be awarded." *Id.*

In short, this litigation does not implicate "disparity between the resources and expertise" of the parties.  AAU represents some of the most prestigious entities in the United States, all of which have substantial endowments.  Indeed, AAU boasts that its "member universities earn the majority of competitively awarded federal funding for energy and climate research . . .". Doc. No. 2-1 at ¶ 3.  In 2024, AAU's member universities paid $127.5 billion in salaries to 912,626

14

employees.[7]  Nine of these member universities participated as named Plaintiffs, meaning that most Plaintiffs are leading IHEs that earn hundreds of millions in federal funding alone. Awarding EAJA fees here would be incongruous with EAJA's statutory purpose.

## III.    AAU's Fees Should Be Reduced

Even if the Court determines an award of attorney fees is warranted, AAU's requested $266,340.30 in fees should be reduced for three reasons.  First, enhanced EAJA fees are not appropriate in Administrative Procedure Act cases.  The Court should therefore deny AAU's request for an elevated rate of $500 per hour for certain attorneys.  Second, the single indirect costs rate cap case AAU's attorneys litigated before this case was insufficient to grant them any sufficiently specialized knowledge to warrant an elevated rate.  Finally, various billing records practices and staffing decisions resulted in an inflated number of hours spent litigating.[8]  AAU seeks reimbursement for twenty-three attorneys and five paralegals for a relatively straightforward issue of administrative law with few if any factual disputes and a limited record. Taken together, these issues justify a substantial decrease in the number of hours allowed.

   A.  <u>AAU has not shown it is entitled to an increased hourly fee.</u>

EAJA establishes a statutory cap of $125 for attorney fees.  28 U.S.C. § 2412(d)(2)(A)(ii).  "The statutory cap is, broadly speaking, designed to hold down the government's costs by providing modest compensation, with exceptions."  *Atl. Fish Spotters Ass'n v. Daley*, 205 F.3d 488, 491 (1st Cir. 2000).  This cap reflects the dual purposes of EAJA:

---

[7] https://www.aau.edu/americas-leading-research-universities-numbers (visited April 23, 2026).

[8] AAU also seeks expenses for its Appellee's brief.  Doc. No. 78-5.  However, the DOE's unopposed motion to dismiss its appeal, stated, without exception for an EAJA application, that each party would bear its own costs.  Unopposed Mot. to Voluntarily Dismiss Appeal, AAU v. DOE, No. 25-1727 (1st Cir. Mar. 11, 2026).  AAU presumably reviewed this unopposed motion before stating its nonopposition.  The final award calculation should also be reduced by $843.24.

"ensuring representation for those who need it and *minimizing the cost of such representation to the taxpayers*." *Williams v. Barnhart*, 206 Fed. App'x 378, 379 (5th Cir. 2006) (emphasis added). As such, exceeding the statutory cap may be appropriate where "some distinctive knowledge or specialized skill [is] *needful* for the litigation in question," *Atl. Fish Spotters Ass'n*, 205 F.3d at 491–92 (quoting *Pierce*, 487 U.S. at 572) (alteration in original), and "it is necessary to pay more than $125 to obtain attorneys with that skill or knowledge." *Id.*[9] This is a high bar, because "the question is not whether counsel's experience in [applicable law] is helpful or productive but whether it is essential for competent representation." *Id.* at 492.

The First Circuit has already spoken on the impropriety of enhanced EAJA fees in Administrative Procedure Act cases. Although "[m]odern administrative law involves, in practically every area, a tangle of discrete regulations, various precedents, a bureaucratic vocabulary and some background knowledge," it requires no specialized skill to "learn enough about the particular controversy to litigate in the area adequately." *Id.* at 492. On the contrary, "[t]o assess the Secretary's justifications and seek to puncture them by reasoning and publicly available data is to deploy exactly the skills taught in law school." *Id.*; *see also Lewis v. Sec'y of Health & Hum. Servs.*, 370 F. Supp. 3d 267, 273 (D. Mass. 2019). Aside from invoking its regulatory nature, AAU fails to demonstrate that this litigation required anything beyond the typical legal skills that any competent attorney possesses. Doc. No. 79 at 18–19.

Indeed, EAJA implicitly disallows enhanced EAJA rates based on an attorney's experience in a particular area of law or knowledge of a particular regulatory scheme. If more

---

[9] The United States does not oppose the increased rates proposed by AAU to account for cost of living adjustments. Doc. No. 79 at 18 (stating that the statutory rate is $266.35 per hour worked in 2025 and $269.28 per hour worked in 2026).

experience in an area of law justified higher rates under EAJA, then EAJA's fee caps would increase based on the years of an attorney's experience.  They do not.

Resisting this conclusion, AAU's attorneys couple this claimed "experience and expertise" with the need to move quickly lest their clients suffer irreparable harm.  Doc. No. 79 at 18–19.  But plaintiffs bringing APA cases against the United States routinely move for preliminary injunctions by raising the specter of irreparable harm.  If regulatory knowledge coupled with the threat of irreparable harm were sufficient to justify an upwards rate increase, then *the majority* of prevailing APA cases would qualify for an upward adjustment.  Because the Supreme Court has already decried an interpretation of EAJA's upward adjustment language that would "effectively eliminate [EAJA's rate cap]," *Pierce*, 487 U.S. at 571, AAU's argument sweeps too broadly.

In any event, AAU's assertion that its attorneys' skills were necessary to file their complaint and TRO motion over the course of a weekend, Doc. No. 79 at 19, is belied by their own EAJA motion in a similar case.  In the *first* case that Plaintiffs filed against a different rate cap policy, Plaintiffs similarly filed a complaint, TRO motion, and barrage of declarations over the course of a weekend.  EAJA Mot., Doc. No. 109 at 19–20, *AAU v. HHS*, No. 1:25-cv-10346, (D. Mass. Apr. 4, 2025).  It simply cannot be the case that the expertise Plaintiffs' attorneys cultivated through previous, similar litigation was critical to filing this action quickly, when they filed their *very first* action in the exact same amount of time.

B.  <u>The number of hours should be reduced.</u>

Even if the Court is inclined to award EAJA fees to AAU, the Court should reduce the hours awarded.  "The plaintiffs bear the burden of establishing the reasonableness of the rates and hours submitted in their application for fees."  *Mason v. Me. Dep't of Corr.*, 387 F. Supp. 2d 57, 60 (D. Me. 2005).  While reviewing an EAJA request, "[d]istrict courts have broad discretion

17

in determining reasonable fees." *Sinclair v. Berryhill*, 284 F. Supp. 3d 111, 116 (D. Mass. 2018).

AAU's requested fees are overstated for three reasons. First, many of the time entries are block-

billed. Second, other entries are vague. Third, the sheer amount of time spent "corresponding"

suggests potential overstaffing inefficiencies that should not be compensated by an EAJA award.

    1. *AAU's Attorneys Improperly Block-Billed Their Hours*

Many of the billing entries submitted by AAU's attorneys lack specificity and do not

permit the Court to evaluate the propriety of EAJA reimbursement. Where "time records [] are

ill-suited for evaluative purposes, the court is hampered in ascertaining whether those hours were

excessive, redundant, or spent on irrelevant issues. In such a circumstance, the court may adjust

those entries to achieve an equitable result." *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 340

(1st Cir. 2008) (citations omitted). One such form of poor timekeeping is "block billing" which

is the "time-keeping method by which an attorney lumps together the total daily time spent

working on a case, rather than itemizing the time expended on specific tasks." *Torres-Rivera v.*

*Espada-Cruz*, No. 99-1272, 2007 WL 906176, at *2 (D.P.R. Mar. 22, 2007), *aff'd*, 524 F.3d 331,

340 (1st Cir. 2008). In such circumstances, the "First Circuit has endorsed across-the-board

global fee reductions as an appropriate remedy for block billing practices." *E.E.O.C. v.*

*AutoZone, Inc.*, 934 F. Supp. 2d 342, 355 (D. Mass. 2013). These across-the-board reductions of

"fifteen to twenty percent have been fairly common penalties for block billing in this circuit."

*Id.* Here, the attorneys blocked billed 165.7 hours. Exs. C, D. This "prominently feature[d]

evidence of block billing" justifies an overall reduction of 20 percent, or 105.45 hours.[10]

---

[10] Under First Circuit practice, the global reduction applies *after* all other reductions. *See id.*

### 2. *Many of the Entries are Objectionably Vague*

Many other entries are drafted so vaguely as to defy effective judicial review. These entries "lump together multiple distinct activities," *N.H. Hosp. Ass'n v. Azar*, No. 15-cv-460, 2019 WL 1406631, at *14 (D.N.H. Mar. 28, 2019), such that they do not "allow the paying party to dispute the accuracy of the records as well as the reasonableness of the time spent," *Lipsett v. Blanco*, 975 F.2d 934, 938 (1st Cir. 1992) (quoting *Calhoun v. Acme Cleveland Corp.*, 801 F.2d 558, 560 (1st Cir. 1986)). Where this is the case, a reduction of 50 percent is warranted. *Id.* at 944. Here, the sheer number of attorneys assigned to this case led to duplicative communications and conferences between those attorneys. *See infra* at 19–20. But many of the entries provided by AAU's attorneys obscure the severity of this problem by grouping together substantive work and communications. Exs. E, F.

Yet more entries are so general that they are difficult to assess. *See New Jersey v. EPA*, 703 F.3d 110, 115 (D.C. Cir. 2012) (deeming entries like "draft reply brief" inadequate when used to describe many hours). AAU's request contains numerous vaguely described entries such as "[d]rafted TRO brief" and "[d]rafted complaint." Ex. E.

In sum, these vaguely described entries account for 383.25 attorney hours. Exs. E, F. Reducing that amount by 50 percent results in a reduction of 191.625 hours. *See New Jersey*, 703 F.3d at 115 (finding that vague description coupled with other overbilling practices justified hour reduction of 75 percent).

### 3. *Plaintiffs' Team of Attorneys Was Unnecessarily Large*

AAU also unreasonably seeks reimbursement for the large number of attorneys Plaintiffs retained to litigate this case. A "trial court should ordinarily greet a claim that several lawyers were required to perform a single set of tasks with healthy skepticism." *Cano v. Saul*,

19

505 F. Supp. 3d 20, 30 (D. Mass. 2020) (quoting *AutoZone*, 934 F. Supp. 2d at 350).  This skepticism flows from judicial recognition "that at some point, allocating portions of a task among group members ceases to raise productivity and instead begins to hinder it."  *Miller v. Holzmann*, 575 F. Supp. 2d 2, 44 (D.D.C. 2008); *Wild Fish Conservancy v. Thom*, No. C20-417, 2025 WL 3259740, at *7 (W.D. Wash. May 19, 2025) (noting that "[w]hile internal strategy meetings can enhance efficiency, an overabundance of redundant or unnecessary conferences diminishes productivity").  Indeed, "a court should not hesitate to discount hours if it sees signs that a prevailing party has overstaffed a case."  *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 297 (1st Cir. 2001) (discussing attorney fees owed under a different statute).  Here, Plaintiffs' law firms assigned 23 lawyers and five paralegals to this case.  Doc. No. 78-6.  As an apparent result of this overstaffing, AAU's attorneys billed 68.5 hours merely corresponding.  Exs. G, H.  These hours should receive a 25 percent reduction.  In total, these reductions would reduce the attorney hours billed by 17.125 hours.

* * *

In sum, AAU seeks reimbursement for 736 hours of attorney time.  Even if the Court determines that AAU is entitled to fees under EAJA, the Court should reduce these hours by 271.7 attorney hours to a total of 421.8 attorney hours.  At rates of $266.35 per attorney hour in 2025, and $269.28 in 2026, the proper award is $116,492.58, inclusive of paralegal fees.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court deny AAU's motion for attorney fees under EAJA in full, or, alternatively, award a reduced amount of $116,492.58.

Dated: May 20, 2026

BRETT A. SHUMATE
Assistant Attorney General

LEAH B. FOLEY
United States Attorney

BRENNA E. JENNY
Deputy Assistant Attorney General

KIRK T. MANHARDT
Director

MARC S. SACKS
Deputy Director

 /s/ *Zachary Semple*
ZACHARY SEMPLE (D.C. Bar 1778723)
Trial Attorney
U.S. Department of Justice, Civil Division
Corporate/Financial Litigation Section
P.O. Box 875
Ben Franklin Station
Washington D.C. 20044-0875
Tel: (202) 307-0244
Zachary.Semple@usdoj.gov
bethany.theriot@usdoj.gov

*Attorneys for Defendants*

21

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


Dated: May 20, 2026                                      /s/ *Zachary Semple*
                                                         Zachary Semple
                                                         Trial Attorney